People v Coss (2020 NY Slip Op 07431)





People v Coss


2020 NY Slip Op 07431


Decided on December 10, 2020


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: December 10, 2020

108878

[*1]The People of the State of New York, Respondent,
v
Anthony C. Coss, Appellant.

Calendar Date: October 14, 2020

Before: Garry, P.J., Egan Jr., Lynch, Clark and Colangelo, JJ.


Anthony C. Coss, Albion, appellant pro se.
Palmer J. Pelella, Special Prosecutor, Binghamton, for respondent.



Lynch, J.
Appeal from a judgment of the County Court of Broome County (Cawley Jr., J.), rendered August 25, 2016, upon a verdict convicting defendant of the crimes of burglary in the third degree, grand larceny in the third degree, criminal possession of stolen property in the third degree and unlawful fleeing a police officer in a motor vehicle in the third degree.
Defendant was arrested following a high-speed police chase in the Town of Vestal, Broome County, which ended when his vehicle crashed into a marsh. Following defendant's arrest, his vehicle was towed to Airborne Auto — a private company — where it was stored. An employee of Airborne Auto searched the vehicle and found a bag of automotive tools in the trunk, which police later identified as having been stolen during a burglary at Binghamton Auto Exchange, a nearby automotive center. As a result, defendant was charged by indictment with burglary in the third degree, grand larceny in the third degree, criminal possession of stolen property in the third degree and unlawful fleeing a police officer in a motor vehicle in the third degree.
Prior to trial, defendant moved to, among other things, proceed pro se and suppress the evidence found in his vehicle. County Court granted defendant's request to proceed pro se with the assistance of standby counsel and scheduled a Mapp hearing to determine the admissibility of the evidence. Following the hearing, County Court denied defendant's motion to suppress the evidence, finding that the search of defendant's vehicle was lawful. A jury trial ensued, following which defendant was convicted as charged. He was sentenced, as a second felony offender, to concurrent prison terms of 3½ to 7 years upon the burglary, grand larceny and criminal possession of stolen property convictions, and to a concurrent lesser jail term upon his conviction of unlawfully fleeing a police officer in a motor vehicle. Defendant appeals.
Defendant's sole contention is that County Court erred in denying his motion to suppress the evidence found in his vehicle because it was obtained pursuant to an illegal search. We disagree. During the Mapp hearing, the People elicited testimony that, on December 31, 2013, State Trooper Joseph Walp was driving his police vehicle in the Town of Vestal when he noticed a white Cadillac. Walp ran the Cadillac's license plate number through an on-board computer database and learned that the vehicle's registration had expired and it was uninsured. Upon activating his emergency lights to effectuate a traffic stop, defendant was unresponsive. Walp then pulled up to the side of defendant's vehicle and motioned for him to pull over, but defendant sped off. A chase ensued, during which defendant's vehicle reached speeds of up to 117 miles per hour. The chase ended when defendant failed to navigate an exit ramp and crashed into a marsh. Following a brief foot pursuit, Walp apprehended and arrested defendant.
After detaining defendant, police [*2]officers performed an on-scene inventory search of the vehicle, during which they observed various automotive tools but did not seize any items. Thereafter, defendant's vehicle was towed to Airborne Auto, where one of its employees searched the vehicle and discovered a nylon bag in the trunk that contained high-end tools, one of which was valued at approximately $10,000. The employee testified that, when his company tows a car for the police, it is standard practice for the company to take an inventory of the vehicle and to remove and store anything of value to limit potential liability. Upon becoming concerned that the tools may have been stolen given their value, the employee spoke to his boss and they decided to inform the Vestal Police Department of the discovery. Two police investigators proceeded to Airborne Auto, where they encountered an open "nylon type tool bag" sitting on the hood of the car. One of the investigators looked inside of the bag without touching it and observed a computer scanner and drill. At that time, the investigator was aware that certain automotive tools had been stolen from Binghamton Auto during a burglary shortly before defendant's arrest and became suspicious given the "cost of the scanner alone." Due to his knowledge of the burglary, the investigator placed a call to police headquarters to inquire about the serial numbers on the stolen property. Upon speaking with an officer, the investigator learned that a drill was one of the items stolen from Binghamton Auto and obtained its serial number. The investigator then reached into the nylon bag and removed the drill to view its serial number, confirming that it matched the number on the stolen drill. The investigator placed the drill back in the bag and did a "cursory walk" around the Cadillac, where he observed other contents inside of the vehicle in plain view that "appeared to be similar to those reported in the burglary." The investigator testified that he directed an employee of Airborne Auto to place the bag of tools back into the vehicle and to tow it to the Vestal Police Department, where it was impounded. Thereafter, the police obtained a warrant to search defendant's vehicle and found numerous items that matched the description of the property that had been stolen from Binghamton Auto.
On this record, County Court properly denied defendant's motion to suppress the evidence found in his vehicle. Initially, Walp was permitted to run defendant's license plate number through a police database, even without suspicion of criminal activity, and doing so did not constitute a search within the meaning of the Fourth Amendment (see People v Bushey, 29 NY3d 158, 163-164 [2017]). Upon learning that the vehicle was uninsured and that its registration had expired in violation of the Vehicle and Traffic Law (see Vehicle and Traffic Law §§ 319 [1]; 401 [1] [a]), Walp had probable cause to pursue a traffic stop (see People v Hinshaw, 35 NY3d 427, 430 [2020]; People [*3]v Cummings, 157 AD3d 982, 983 [2018], lv denied 31 NY3d 982 [2018]). Defendant's failure to stop and his flight from police, resulting in a high-speed chase on a public roadway at speeds reaching 117 miles per hour, then provided probable cause to detain him (see People v Stafford, 39 AD3d 774, 775-776 [2007], lv denied 9 NY3d 882 [2007]; People v Frazier, 33 AD3d 934, 934 [2006], lv denied 8 NY3d 880 [2007]).
Defendant does not challenge the legality of the inventory search conducted by the State Police at the scene of the crash and, in any event, any challenge thereto is unpreserved insofar as defendant conceded during the Mapp hearing that such inventory search was legally performed (see People v Tardi, 28 NY3d 1077, 1079 [2016]). Furthermore, the search of defendant's vehicle by an Airborne Auto employee — a private individual who was not acting at the direction of police — did not violate his constitutional rights, as the Fourth Amendment "proscrib[es] only governmental action; it is wholly inapplicable to a search or seizure, even an unreasonable one, effected by a private individual not acting as an agent of the [g]overnment or with the participation or knowledge of any governmental official" (United States v Jacobsen, 466 US 109, 113-114 [1984] [internal quotation marks and citations omitted]; see People v Adler, 50 NY2d 730, 737 [1980], cert denied 449 US 1014 [1980]). Having been invited onto the premises by Airborne Auto personnel, police investigators were lawfully in a position to view the open nylon tool bag and its contents, which were in plain view on the hood of defendant's vehicle. Although one of the investigators conducted an independent search when he took a drill out of the nylon bag to examine its serial number (see Arizona v Hicks, 480 US 321, 324-326 [1987]) — which was not immediately apparent from the manner in which the drill was positioned — he had probable cause to believe the drill was stolen. Under these circumstances, we conclude that the investigator's action of picking up the drill to examine its serial number did not amount to an "unreasonable" search proscribed by the NY or US Constitution (see People v McMahon, 238 AD2d 834, 837 [1997]; see generally Arizona v Hicks, 480 US at 325-326). In any event, there was sufficient probable cause even absent inspection of the drill for issuance of a search warrant.
Garry, P.J., Egan Jr., Clark and Colangelo, JJ., concur.
ORDERED that the judgment is affirmed.