People v Mosquito (2021 NY Slip Op 04620)





People v Mosquito


2021 NY Slip Op 04620


Decided on August 4, 2021


Appellate Division, Second Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on August 4, 2021
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

MARK C. DILLON, J.P.
ROBERT J. MILLER
BETSY BARROS
FRANCESCA E. CONNOLLY, JJ.


2019-00985
 (Ind. No. 1033/17)

[*1]The People of the State of New York, respondent,
v
Jahvon Mosquito, appellant.


Patricia Pazner, New York, NY (Chelsea F. Lopez of counsel), for appellant.
Melinda Katz, District Attorney, Kew Gardens, NY (Johnnette Traill, Nancy Fitzpatrick Talcott, and Margaret Iocco of counsel), for respondent.



DECISION & ORDER
Appeal by the defendant from a judgment of the Supreme Court, Queens County (Ronald D. Hollie, J.), rendered December 10, 2018, convicting him of criminal possession of a forged instrument in the second degree (three counts), unlawful possession of marihuana (two counts), and failing to stop at a stop sign, upon a jury verdict, and imposing sentence. The appeal brings up for review the denial, after a hearing (Gene R. Lopez, J.), of those branches of the defendant's omnibus motion which were to suppress certain physical evidence and statements he made to law enforcement officials.
ORDERED that the judgment is reversed, on the law, on the facts, and as a matter of discretion in the interest of justice, that branch of the defendant's omnibus motion which was to suppress three credit cards recovered from the defendant's vehicle is granted, the indictment is dismissed, and the matter is remitted to the Supreme Court, Queens County, for the purpose of entering an order in its discretion pursuant to CPL 160.50.
The defendant was charged under an indictment with three counts of criminal possession of a forged instrument in the second degree (Penal Law § 170.25), two counts of unlawful possession of marihuana (former Penal Law § 221.05), and one count of failing to stop at a stop sign (Vehicle & Traffic Law § 1172[a]). After a hearing, the Supreme Court denied those branches of the defendant's omnibus motion which were to suppress physical evidence and statements he made to law enforcement officials.
After a jury trial, the defendant was convicted of three counts of criminal possession of a forged instrument in the second degree, two counts of unlawful possession of marihuana, and failing to stop at a stop sign. He was subsequently sentenced to concurrent indeterminate terms of imprisonment of 3½ to 7 years on each conviction of criminal possession of a forged instrument in the second degree and a concurrent definite term of imprisonment of 15 days on the conviction of failing to stop at a stop sign, and fined $100 for each conviction of unlawful possession of marihuana.
This Court assigned the defendant counsel to prosecute his appeal from the judgment. On appeal, the defendant contends, inter alia, that the Supreme Court should have granted that [*2]branch of his omnibus motion which was to suppress three credit cards that were recovered from his vehicle by law enforcement officers. The defendant completed serving the entire incarceratory portion of his sentence before his appellate brief was filed with this Court. Under the circumstances, the defendant contends that the entire indictment should be dismissed. We agree.
"The motive force for the constitutional safeguards precluding unreasonable searches and seizures (NY Const, art I, § 12; US Const, 4th Amdt) is protection against arbitrary governmental invasion of privacy" (People v Hodge, 44 NY2d 553, 557; see United States v Chadwick, 433 US 1, 11). "To assure that, save for few specifically established and well-defined exceptions, the determination of whether the desire of the police to conduct a search or seizure is supported by probable cause is entrusted in the first instance to a neutral Magistrate" (People v Hodge, 44 NY2d at 557). "'All warrantless searches presumptively are unreasonable per se'" (People v Jimenez, 22 NY3d 717, 721, quoting People v Hodge, 44 NY2d at 557). "Where a warrant has not been obtained, it is the People who have the burden of overcoming that presumption" (People v Hodge, 44 NY2d at 557; see People v Jimenez, 22 NY3d at 721).
"Under the State Constitution, to justify a warrantless search incident to arrest, the People must satisfy two separate requirements" (People v Jimenez, 22 NY3d at 721). "The first imposes spatial and temporal limitations to ensure that the search is 'not significantly divorced in time or place from the arrest'" (id., quoting People v Smith, 59 NY2d 454, 458 [internal quotation marks omitted]). "The second, and equally important, predicate requires the People to demonstrate the presence of exigent circumstances" (People v Jimenez, 22 NY3d at 722; cf. Arizona v Gant, 556 US 332, 345).
In addition to a warrantless search incident to an arrest, the Court of Appeals has separately "recognized a 'narrow' automobile exception to the State Constitution's warrant requirement" (People v Langen, 60 NY2d 170, 180, quoting People v Belton, 55 NY2d 49, 54). In Belton, the Court of Appeals held that when "police have validly arrested an occupant of an automobile, and they have reason to believe that the car may contain evidence related to the crime for which the occupant was arrested or that a weapon may be discovered or a means of escape thwarted, they may contemporaneously search the passenger compartment, including any containers found therein" (People v Belton, 55 NY2d at 55; see People v Langen, 60 NY2d at 180; cf. Arizona v Gant, 556 US at 343).
The Court of Appeals has further recognized that "'[if] probable cause justifies the search of a lawfully stopped vehicle, it justifies the search of every part of the vehicle and its contents that may conceal the object of the search'" (People v Ellis, 62 NY2d 393, 398, quoting United States v Ross, 456 US 798, 825; see People v Yancy, 86 NY2d 239, 245; see also Arizona v Gant, 556 US at 347). However, "[a] police officer's entry into a citizen's automobile and [the police officer's] inspection of personal effects located within are significant encroachments upon that citizen's privacy interests" (People v Torres, 74 NY2d 224, 229-230; see Arizona v Gant, 556 US at 345). "Under . . . long-standing precedent, such intrusions must be both justified in their inception and reasonably related in scope and intensity to the circumstances which rendered their initiation permissible" (People v Torres, 74 NY 2d at 230; see generally People v De Bour, 40 NY2d 210, 215).
At the suppression hearing in this case, Police Officer Craig Zaleski testified that he had been a police officer for three years and had previously made approximately 80 arrests, approximately 30 of which had been with respect to marihuana and approximately 20 of which had been for forged or fraudulent credit cards. Officer Zaleski also had training with respect to the identification of marihuana and with regard to forged or fraudulent credit cards.
At approximately 2:15 a.m. on December 10, 2016, Officer Zaleski, who was working in plain clothes with a partner in an unmarked vehicle, observed a white Honda fail to stop at the stop sign at 38th Avenue and 32nd Street in Queens. Officer Zaleski activated the emergency lights and siren on his vehicle, pulled over the Honda, exited his vehicle, and approached the Honda. Officer Zaleski testified that when he approached the Honda, he smelled an odor of marihuana. [*3]When he looked into the driver's side window, he saw a small bag on the floor between the door and the driver's seat. Based upon his visual observation of the contents of the small bag and his training and experience, Officer Zaleski believed that the bag contained marihuana.
Officer Zaleski asked the defendant, the driver of the Honda, for his license and registration, which the defendant provided. Officer Zaleski then asked the defendant to step out of the vehicle and directed him to the back of the vehicle near the trunk. At the back of the vehicle, Officer Zaleski asked the defendant if there was anything else in the car that he needed to know about, and the defendant said there was more marihuana in the car in a bag in the back seat.
Thereafter, while the defendant and the other individual in the vehicle were at the back of the vehicle with Officer Zaleski's partner, Officer Zaleski searched the vehicle, looking for more marihuana. Officer Zaleski recovered several bags of what appeared to be marihuana from the inside of a black backpack that was located in the back seat of the vehicle. Officer Zaleski also recovered three credit cards from a small zippered wallet that was in the center console of the vehicle. Officer Zaleski testified that, based on his training and experience, he believed that the credit cards were forged because the names on the credit cards did not match the names of the individuals in the vehicle and the signature pads on the cards were not "raised."
The Supreme Court denied those branches of the defendant's omnibus motion which were to suppress physical evidence and statements he made to law enforcement officials. With regard to the physical evidence, the court credited Officer Zaleski's testimony that he smelled an odor of marihuana coming from the vehicle and observed a small bag of marihuana on the floor between the driver's seat and the door. The court concluded that those observations provided Officer Zaleski with probable cause to believe the vehicle contained more contraband, and thus, the ensuing search of the vehicle, which resulted in the seizure of additional marihuana and credit cards, was lawful pursuant to the automobile exception to the warrant requirements of the State and Federal Constitutions.
"Probable cause exists if the facts and circumstances known to the arresting officer warrant a reasonable person to conclude that a crime is being or was committed" (People v Yancy, 86 NY2d at 245; see Texas v Brown, 460 US 730, 741-742). Here, given the odor of marihuana and his visual observation of what he believed to be a small bag of marihuana on the floor of the vehicle, Officer Zaleski had probable cause to arrest the defendant for unlawful possession of marihuana. The defendant does not contest otherwise. The testimony at the hearing demonstrated that "functionally, if not formally, [the] defendant was arrested when he was taken" to the back of his vehicle where he was secured by Officer Zaleski's partner while Officer Zaleski searched the vehicle for additional marihuana (People v Blasich, 73 NY2d 673, 681). As the People correctly contend, Officer Zaleski's testimony at the suppression hearing, credited by the Supreme Court, demonstrated that upon the defendant's arrest for unlawful possession of marihuana, Officer Zaleski had probable cause to believe that additional marihuana might be located elsewhere in the defendant's vehicle (see People v Galak, 81 NY2d 463, 467; People v Langen, 60 NY2d at 180; People v Belton, 55 NY2d at 55; cf. Arizona v Gant, 556 US at 335-336). Under such circumstances, Officer Zaleski "could properly search the entire [vehicle]" (People v Langen, 60 NY2d at 181-182), and the search of the vehicle could lawfully include any closed containers found therein "in which there was probable cause to believe that [marihuana] may be found" (United States v Ross, 456 US at 825; see People v Ellis, 62 NY2d at 398). The record here established that Officer Zaleski had probable cause to search the center console of the vehicle—and the small zippered wallet that was contained within it—for the presence of marihuana (see People v DiMatteo, 62 AD3d 418, 419; People v Bonilla, 199 AD2d 519, 520; cf. People v Ponder, 195 AD3d 123).
The People assert that Officer Zaleski lawfully encountered the credit cards during the course of his search of the zippered wallet for the presence of marihuana. The People further contend that the seizure of the three credit cards was justified by Officer Zaleski's testimony that the names on the cards did not match the names of the occupants in the vehicle, and that the raised signature pads on the cards led him to believe that they were forged.
"It is well established that under certain circumstances the police may seize evidence in plain view without a warrant" (Coolidge v New Hampshire, 403 US 443, 465). "An example of the applicability of the 'plain view' doctrine is the situation in which the police have a warrant to search a given area for specified objects, and in the course of the search come across some other article of incriminating character" (id. at 465). "Where the initial intrusion that brings the police within plain view of such an article is supported, not by a warrant, but by one of the recognized exceptions to the warrant requirement, the seizure is also legitimate" (id.). "Of course, the extension of the original justification [for the search] is legitimate only where it is immediately apparent to the police that they have evidence before them" (id. at 466). "[T]he 'plain view' doctrine may not be used to extend a general exploratory search from one object to another until something incriminating at last emerges" (id.).
"Under the plain view doctrine, if the sight of an object gives the police probable cause to believe that it is the instrumentality of a crime, the object may be seized without a warrant if three conditions are met: (1) the police are lawfully in the position from which the object is viewed; (2) the police have lawful access to the object; and (3) the object's incriminating nature is immediately apparent" (People v Diaz, 81 NY2d 106, 110). "The plain view doctrine, it must be emphasized, establishes an exception to the requirement of a warrant not to search for an item, but to seize it" (id. at 110). "[T]he fundamental justification for the plain view doctrine is that when the police are already lawfully in a position to make the observation, the discovery and seizure of contraband in plain view involve no intrusion on the individual's constitutional rights beyond that already authorized by the warrant or some exception to the warrant requirement" (id. at 111).
"[A] truly cursory inspection—one that involves merely looking at what is already exposed to view, without disturbing it—is not a 'search' . . . and therefore does not even require reasonable suspicion" (Arizona v Hicks, 480 US 321, 328). By contrast, the plain view doctrine is not applicable where the object must be moved or manipulated before its illegality can be determined (see Minnesota v Dickerson, 508 US 366, 378; Arizona v Hicks, 480 US at 328; People v Diaz, 81 NY2d at 110). The movement or manipulation of an object from its original state in a manner that goes beyond the objectives of the original search constitutes an independent search or seizure within the meaning of the State and Federal Constitutions (see Minnesota v Dickerson, 508 US at 378; Arizona v Hicks, 480 US at 328; People v Etoll, 51 NY2d 840, 841; cf. Wilson v Layne, 526 US 603, 611 ["the Fourth Amendment . . . require[s] that police actions in execution of a warrant be related to the objectives of the authorized intrusion"]). Such a search or seizure may not be upheld without proof that the officer who moved or manipulated the object had probable cause to believe that the object was evidence or contraband at the time that it was moved or manipulated (see Arizona v Hicks, 480 US at 328; People v Etoll, 51 NY2d at 841; People v Rivas, 214 AD2d 996, 996; People v Clemente, 202 AD2d 302, 302; People v Richie, 77 AD2d 667, 668; People v Haas, 55 AD2d 683, 683; People v Taylor, 11 Misc 3d 1053[A] [Sup Ct, Bronx County]).
Here, contrary to the People's contention, Officer Zaleski did not testify that the names and signature pads on the three credit cards were inadvertently exposed to him during the course of his search for marihuana (see Coolidge v New Hampshire, 403 US at 467; cf. People v Guadagno, 91 AD2d 753, 753 [stolen credit cards seized from dashboard of vehicle]). Nor did Officer Zaleski testify that he determined that the credit cards were illicit before he removed them from the zippered wallet or otherwise manipulated them in order to expose them to his view. We reiterate that, on this record, any such movement or manipulation was unlawful unless Officer Zaleski had probable cause to believe that the credit cards were stolen or illicit at the time he moved or manipulated them from their original position within the zippered wallet.
Although Officer Zaleski lawfully encountered the three credit cards when he opened the zippered wallet to see whether there was marihuana inside it, the facts available to Officer Zaleski at the time he opened the zippered wallet would not "warrant a [person] of reasonable caution in the belief that [the credit cards] may be contraband" (Texas v Brown, 460 US at 742 [citation and internal quotation marks omitted]; cf. Wayne LaFave, Search And Seizure: A Treatise On The Fourth Amendment § 2.7[c]). Indeed, at the time Officer Zaleski opened the zippered wallet, there was no evidence connecting the defendant to any burglary, or any other reason to believe that [*4]the three credit cards in the zippered wallet were stolen, forged, or otherwise illicit (see Arizona v Hicks, 480 US at 323, 326 ["'plain view' doctrine would have sustained a seizure of [stereo] equipment . . . if [the law enforcement officer] had probable cause to believe that the equipment was stolen" before the officer "read and recorded their serial numbers—moving some of the components . . . in order to do so"]; see also People v Greene, 104 AD2d 601, 603 [seizure of stolen goods was unlawful where the police "at that time had no knowledge of any burglary having been committed" and lacked probable cause to believe that the goods were stolen]; People v Cook, 85 AD2d 672, 672-673 [seizure of stolen goods was unlawful where the police at that time lacked probable cause to believe that the goods were stolen]; cf. People v Coss, 189 AD3d 1759, 1761-1762 [automobile search upheld where law enforcement officer who removed a drill from nylon bag to inspect serial number had probable cause to believe it was stolen before the drill was removed from the bag based upon, inter alia, information he received about a recent nearby burglary from an automotive shop]; People v McMahon, 238 AD2d 834, 835-836 [rejecting the defendant's contention that "the police improperly searched property which was not in 'plain view' when they opened the camcorder case and moved certain appliances in order to acquire serial numbers" where, "[d]uring their [initial] sweep of the house, [one of the law enforcement officers] recognized items which appeared to match descriptions of property reported stolen during recent burglaries"]; People v Guadagno, 91 AD2d 753 [inspection and seizure of credit cards from vehicle was lawful where officers who seized the cards during the search of the vehicle knew prior to the search that one of the occupants of the vehicle was a fugitive who was alleged to be a member of a notorious burglary ring]).
On this record, Officer Zaleski's discovery of three credit cards stacked inside a small zippered wallet was insufficient, without more, to justify an additional search that went beyond the search for marihuana. "[A]n officer's inadvertent or incidental observation of an openly visible article that is known to have illicit uses is in and of itself insufficient to establish probable cause" (People v Yancy, 86 NY2d at 246; see People v Etoll, 51 NY2d at 841; People v Rivas, 214 AD2d at 996; People v Clemente, 202 AD2d at 302; People v Richie, 77 AD2d at 668; People v Haas, 55 AD2d at 683; see also People v Davis, 36 NY2d 280, 282). The People here failed to sustain their burden of demonstrating that Officer Zaleski had "probable cause to associate the property with criminal activity" at the time he moved or manipulated the credit cards (Payton v New York, 445 US 573, 587). "[T]his type of foray into [the] defendant's [personal papers and effects] . . . is precisely the type of general exploratory search so abhorrent to the Constitution" (People v Haas, 55 AD2d at 683; see Arizona v Hicks, 480 US at 328 ["'the "plain view" doctrine may not be used to extend a general exploratory search from one object to another until something incriminating at last emerges'"]; Coolidge v New Hampshire, 403 US at 466 [same]).
The New York Constitution guarantees "[t]he right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures" (NY Const, art I, § 12 [emphasis added]). As the Court of Appeals has recognized, "the State Constitution protects the privacy interests of the people of our State, not only in their persons, but in their . . . papers and effects as well, against the unfettered discretion of government officials to search or seize" (People v Belton, 55 NY2d at 52 [emphasis added]; see NY Const, art I, § 12; People v Langen, 60 NY2d at 180; see generally Vito J. Titone, State Constitutional Interpretation: The Search for an Anchor in a Rough Sea, 61 St John's L Rev 431, 462-466 [1987]). We reaffirm today that all warrantless searches or seizures of an individual's papers and effects "'presumptively are unreasonable per se'" (People v Jimenez, 22 NY3d at 721, quoting People v Hodge, 44 NY2d at 557).
Ultimately, the People failed to sustain their burden of demonstrating that the three credit cards recovered from the defendant's vehicle were lawfully seized under the plain view doctrine during the course of Office Zaleski's warrantless search of the vehicle for marihuana. Accordingly, that branch of the defendant's omnibus motion which was to suppress the three credit cards recovered from the defendant's vehicle should have been granted. Under the circumstances, we dismiss the indictment (see People v Dreyden, 15 NY3d 100, 102-104; People v Burwell, 53 NY2d 849, 851).
In light of the foregoing, we need not, and do not, reach any of the parties' remaining contentions.
DILLON, J.P., MILLER, BARROS and CONNOLLY, JJ., concur.
ENTER:
Aprilanne Agostino
Clerk of the Court