People v Castelan (2024 NY Slip Op 51073(U))

[*1]

People v Castelan

2024 NY Slip Op 51073(U)

Decided on August 20, 2024

Criminal Court Of The City Of New York, Queens County

Watters, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on August 20, 2024
Criminal Court of the City of New York, Queens County

The People of the State of New York

against
Ignacio Castelan, Defendant

Docket No. CR-035405-23QN

For the Defendant: Gregory Benneditto Haynes
The Legal Aid Society
For the People: Melinda Katz, District Attorney, Queens County
ADA MyeongHwan Cha

Joanne Watters, J.

Summary of the Court's decision:
1. Following a combined Huntley/Dunaway/Mapp/Victory hearing, the defendant's motion to suppress is DENIED in its entirety;
2. Defendant's motion to invalidate the People's COC is DENIED; and
3. Defendant's motion to dismiss pursuant to CPL 30.30 is DENIED.
The defendant is charged with driving while intoxicated (VTL 1192[2], 1192 [2][a]; and 1192[3]); driving while ability impaired (VTL 1192[1]); and consumption of alcoholic beverages in certain motor vehicles (VTL 1227[1]).
At the arraignment on December 3, 2023, the People served notice pursuant to CPL 710.30(1)(a) seeking to introduce at trial the defendant's statement to law enforcement on December 2, 2023.
On February 23, 2024, the People filed a Certificate of Compliance (COC) pursuant to CPL 245.50(1), along with a Statement of Readiness for trial (SOR) pursuant to CPL 30.30, and [*2]certification pursuant to CPL 30.30(5-a).
On February 28, 2024, the People filed a Supplemental Certificate of Compliance (SCOC), indicating that they had served LEOW disclosures for Officer Powell.
On May 31, 2024 and June 7, 2024, the People filed additional SCOCs with additional disclosures: photos of the vehicle, vouchers, body-worn camera video.
On July 11, 2024, the Court conducted a combined Huntley/Mapp/Dunaway/Victory hearing wherein the defendant moved to suppress the defendant's statement to law enforcement, chemical test results taken at the IDTU, and a bottle of Modelo beer.
On July 31, 2024, the People filed another SCOC with additional calibration reports.
By motion filed on August 6, 2024, the defense challenges the People's COC as invalid and SOR as illusory and seeks to dismiss the criminal action pursuant to CPL 30.30. The People filed their response on August 7, 2024. 
The Court addresses each motion, in turn, below.
 HUNTLEY/DUNAWAY/MAPP/VICTORY SUPPRESSION HEARINGS
At the hearing, the People called two witnesses: Police Officer Peter Powell and Police Officer Diamond Reyes. I find the witnesses credible and make the following findings of fact and conclusions of law.
a. Findings of Fact
People's Witness #1: Police Officer Peter Powell
Police Officer Peter Powell has been a police officer with the New York City Police Department (NYPD) for approximately one year and three months. He is currently assigned to the 115 Precinct.
On December 2, 2023, Officer Powell was working the tour of 5:30 p.m. to 2:00 a.m. At approximately 8:22 p.m., while on foot patrol with Officer Diamond Reyes, Officer Powell observed a blue Honda Civic parked in front of a fire hydrant at the intersection of 103 Street and 39 Avenue in Queens County. Officer Powell testified that the vehicle had its engine on and had two occupants: one driver and one passenger. Officer Powell testified that as the motorist was lowering the vehicle's window, he observed the top portion of a glass bottle of Modelo in the cupholder. Officer Reyes instructed the motorist, who was identified during the hearing as the defendant, to step out of the vehicle. Defendant was standing two feet away from Officer Powell when the officer observed an odor of alcohol, bloodshot-watery eyes, and slurred speech. Officer Powell testified that the area was well-lit by streetlights.
Officer Powell also testified that the defendant answered "yes" in English when asked by Officer Reyes whether he had been drinking. The defendant also raised two fingers. When the statement was made, the officer had his weapons in the holster; no threats or promises were made to the defendant; and no restraints or force were used on the defendant.
At that point, the officer determined that the defendant was intoxicated, and defendant was arrests at 8:44 p.m. and taken to the 112th Precinct for further testing at the IDTU.
People's Witness #2: Diamond Reyes
Police Officer Diamond Reyes has been an officer with the NYPD for one and a half years and is currently assigned to the 115 Precinct.
On December 2, 2023, she was in uniform and on foot patrol in Queens County with her partner, Officer Peter Powell. At the intersection of 103 Street and 39 Avenue, Officer Reyes observed a blue Honda Civic parked in front of a fire hydrant. Upon approaching the vehicle, she observed the defendant sitting in the driver's seat and a passenger next to him. As the defendant [*3]lowered the window about halfway down, the officer observed a glass bottle of Modelo beer in the center console of the vehicle and smelled an odor of alcohol emanating from inside the vehicle.
Officer Reyes asked the defendant about the bottle of beer in the car, and defendant admitted that it was his and that he had two beers as he raised two fingers. The officer testified that prior to the statement, she made no promises or threats, defendant was not restrained, no force was used, and defendant was not under arrest. Officer Reyes concluded that based on the defendant's admission, the odor of alcohol, blood-shot watery eyes and beer bottle, that defendant was intoxicated.
At the 112th Precinct, Officer Reyes, who testified that she a native Spanish speaker, asked the defendant in Spanish to submit to a breathalyzer, to which the defendant consented.[FN1]

b. Conclusions Of Law
At a suppression hearing, the People have the initial burden of establishing the legality of the police conduct (People v Berrios, 28 NY2d 361 [1971]). The defendant has the ultimate burden of showing that the police acted unlawfully (id.).

Probable Cause (Dunaway)
An officer may approach a parked car for an objective, credible reason, not necessarily indicative of criminality (People v Eugenio, 185 AD3d 1050, 1051 [2d Dept 2020]). Here, the officers were justified in engaging in the minimal intrusion of approaching the vehicle as the defendant's vehicle was blocking a fire hydrant (see People v Thomas, 19 AD3d 32, 37[1st Dept 2005] [Police officers are entitled to conduct a level one inquiry of a person at the wheel of a stationary car that is blocking a fire hydrant]).
Further, Officer Reyes was justified in ordering the defendant out of the vehicle upon observing a bottle of Modelo beer in the cupholder and an odor of alcohol emanating from the inside of the vehicle. Vehicle and Traffic Law § 1227[1] prohibits "possession of an open container containing an alcoholic beverage, in a motor vehicle upon the public highways or right-of-way public highway." A violation of this section is a traffic infraction (id.). Moreover, CPL 140.10(1)(a) states that a police officer may arrest a person for "[a]ny offense when he or she has reasonable cause to believe that such person has committed such offense in his or her presence." Further, VTL § 155 establishes that "for purposes of arrest without a warrant, pursuant to [CPL Article 140], a traffic infraction shall be deemed an offense."
Therefore, Officer Reyes was justified in ordering the defendant out of the vehicle and arresting him once she observed the bottle of Modelo beer in the cupholder of the vehicle [see People v Boykin, 188 AD3d 1244 [2020]).
Finally, once the defendant exited the vehicle, both officers testified that they observed the defendant to have an odor of alcohol, bloodshot-watery eyes, and slurred speech. Additionally, defendant admitted that the beer belonged to him and he had two beers.
Therefore, the Court finds probable cause existed to arrest the defendant for driving under the influence of alcohol.

 Suppression of Noticed Statement (Huntley)
The defendant argues that his statement at the scene was made during custodial interrogation and without first receiving Miranda warnings.
In a Huntley hearing, the People must prove that the alleged statements were made voluntarily beyond a reasonable doubt (People v Huntley, 15 NY2d 72 [1965]). Moreover, any statement made during a custodial interrogation by the defendant without being informed of his or her constitutional rights must be suppressed (Miranda v Arizona, 384 US 436 [1966]). The test to determine whether a defendant is in custody is "not what the defendant thought, but rather what a reasonable man, innocent of any crime, would have thought had he been in the defendant's position" (People v Yukl, 25 NY2d 585, 589 [1969]; People v DeJesus, 32 AD3d 753 [1st Dept 2006]).
It is well-settled that temporary roadside detention of the defendant for the purpose of investigation whether defendant was committing a crime is permissible (see People v Harris, 186 AD2d 148 [2d Dept 1992]). Thus, "[s]ince individuals who are temporarily detained pursuant to a routine traffic stop are not considered to be in custody for the purposes of Miranda, defendant's roadside detention cannot be deemed custodial" (People v Dougal, 266 AD2d 574, 576 [3d Dept 1999]; see People v Bennett, 70 NY2d 891 [1987]; People v Mathis, 136 AD2d 746, 747 [2d Dept 1988]). 
Here, the Court is satisfied that the officer did not exceed the bounds of a normal traffic stop, as the statement was made during a brief investigatory detention (see People v Brown, 107 AD3d 1305, 1305 [3d Dept 2013] [defendant was not in custody as a matter of law when statement made after defendant failed numerous field sobriety tests during a temporary roadside detention]). The detention was brief, defendant was not in handcuffs, no guns were drawn, and no other officers were present.
Accordingly, the defendant's motion to suppress the statements at the scene is denied.

Suppression of Physical Evidence and Chemical Test Results (Mapp)
The defendant argues that the Modelo beer bottle recovered from the vehicle and the chemical test results must be suppressed, as the People failed to establish the legality of police conduct.
As previously discussed, the People have met their burden of establishing the legality of police conduct at the outset. Moreover, it is well-settled that under certain circumstances the police may seize evidence in plain view without a warrant. "Under the plain view doctrine, if the sight of an object gives the police probable cause to believe that it is the instrumentality of a crime, the object may be seized without a warrant if three conditions are met: (1) the police are lawfully in the position from which the object is viewed; (2) the police have lawful access to the object; and (3) the object's incriminating nature is immediately apparent" (People v Mosquito, 197 AD3d 504 [2d Dept 2021], quoting People v Diaz, 81 NY2d 106, 110 [1993])
Here, the officers were standing next to the vehicle when they observed a glass bottle of Modelo beer in the cupholder of the vehicle. Although it was approximately 8:30 p.m., the officers testified that the area was well-lit with streetlights and there were no obstructions of the cupholder. Therefore, the Court is satisfied that the bottle of beer was observed in plain view.
Accordingly, the defendant's motion to suppress the beer bottle and chemical test results is denied.
DEFENSE'S MOTION TO INVALIDATE THE PEOPLE'S FEBRUARY 23, 2024 COC
CPL 245.20 mandates the People to disclose to the defendant "all items and information that relate to the subject matter of the case and are in the possession, custody or control of the prosecution or persons under the prosecution's direction or control . . . " (see CPL 245.20). The statute enumerates a non-exhaustive list of discoverable items (CPL 245.20[1][a]-[u]) and [*4]further imposes an affirmative duty on the People to make diligent, good-faith efforts to ascertain the existence of material or information to be made available for disclosure where it is not within the prosecutor's possession, custody, or control (CPL 245.20[2]).
The People must certify their discovery compliance in writing and must "state that, after exercising due diligence and making reasonable inquiries to ascertain the existence of material and information subject to discovery, the prosecutor has disclosed and made available all known material and information subject to discovery. It shall also identify the items provided" (CPL 245.50 [1]). "Absent an individualized finding of special circumstances, the filing of a proper COC is a prerequisite to the People being ready for trial" (People v Hamizane, 80 Misc 3d 7, 10 [App. Term, 2d Dept 2023]; see CPL 245.50 [1] and CPL 30.30[5]). Therefore, the discovery statute must be read in conjunction with CPL 30.30 (id.). Moreover, a showing of prejudice is not required to establish that a certificate of compliance is improper (People v Gaskin, 214 AD3d 1353, 1355 [4th Dept 2023]; Hamizane, 80 Misc 3d at 10]).
In addition to filing a valid COC, the People have a continuing duty to disclose additional material or information that it would have been required to disclose pursuant to CPL 245.20 (see CPL 245.60). Where the People provide additional discovery in connection with their continuing duty to disclose, they must file a supplemental certificate of compliance identifying the additional material and the information provided (CPL 245.50[1]; 245.60). A SCOC does not impact the validity of the COC if filed in good faith and after exercising due diligence, or if the additional discovery did not exist at the time of the filing of the COC (CPL 245.50[1-a]). However, the court may grant a remedy or sanction for a discovery violation pursuant to CPL section 245.80 (CPL 245.50[1]).
Therefore, a COC filed in good faith should not be invalidated where the People have demonstrated due diligence and made reasonable inquiries to obtain discovery materials prior to the filing of the COC (CPL 245.50). The touchstone is reasonableness, which is fundamentally case-specific and will turn on the circumstances presented (see People v Bay, 41 NY3d 200, 211 [2023]). The People bear the burden of establishing that they did, in fact, exercise due diligence and make reasonable inquires prior to filing the initial COC despite a belated or missing disclosure (id. at 212).
Due diligence is a mixed question of fact and law, and "courts should generally consider, among other things, the efforts made by the prosecution and the prosecutor's office to comply with the statutory requirements, the volume of discovery provided and outstanding, the complexity of the case, how obvious any missing material would likely have been to a prosecutor exercising due diligence, the explanation for any discovery lapse, and the People's response when apprised of any missing discovery" (id. at 212).
Applying the above legal principles, the Court will now address each item of discovery that defense claims to be disclosed belatedly and, thus, invalidates the People's COC.

Body-Worn Camera Footage of the Inventory of the Vehicle
On June 7, 2024, the People disclosed body-worn camera footage relating to the inventory of the vehicle involved in the offense. The defendant argues that the late disclosure invalidates the People's February 23, 2024 COC. The People do not dispute the discoverability of this BWC footage; instead, they assert that the late disclosure should not invalidate their COC because the prosecutor notified the defense attorney as soon as he realized it was not disclosed and shared the video the same day it was received, which was on June 7, 2024 (People's Response at 15). The People also affirmed that multiple requests were made to the arresting [*5]officer and the NYPD body worn camera unit liaison in connection with this BWC video (People's Response at 15).
The Court finds that the People have met their discovery obligations in this regard. As recognized by People v Bay, "[t]here is no rule of 'strict liability'; that is, the statute does not require or anticipate a 'perfect prosecutor'" (41 NY3d at 212). Moreover, courts have held that inadvertent errors or omissions will not invalidate a COC (People v Nelson, 75 Misc 3d 1203[A] [Crim Ct, NY County 2022] [inadvertent nondisclosure of camera footage]; People v Rodriguez, 73 Mis3d 411 [Sup Ct, Queens County 2021] [belated disclosure of memo books where state turned over 500 pages of documents]; People v Moore, 72 Misc 3d 903 [Sup Ct, Kings County 2021] [belated disclosure of memo books that were inadvertently omitted during the process of uploading discovery]).
Here, the People have disclosed a considerable volume of discovery prior to the filing of the COC, including six BWC videos as well as metadata for those BWC videos. As such, the non-disclosure of this BWC video was not the result of lack of due diligence in ascertaining the existence of this video through reasonable inquiries. Upon learning of the non-disclosure, the People made multiple requests from the officer and NYPD body worn camera unit liaison to obtain the video and disclosed the video the same day it was received by the People.
As such, the Court finds that the COC was filed in good faith after the People exercised due diligence and made reasonable inquiries to ascertain the existence of the BWC video. Accordingly, the defense's motion to invalidate the People's COC on this ground is denied.

Police Officer Peter Powell's LEOW Disclosures
CPL 245.20(1)(k)(iv) provides that the People shall automatically disclose to defendant "all items and information that relate to the subject matter of the case and are in the possession, custody or control of the prosecution or persons under the prosecution's direction or control, including . . . [a]ll evidence and information, including that which is known to police or other law enforcement agencies acting on the government's behalf in the case, that tends to . . . impeach the credibility of a testifying prosecution witnesses."
Here, Officer Powell is a testifying witness; therefore, his disciplinary records are discoverable pursuant to CPL 245.20(1)(k)(iv) (People v Jawad, 2024 NY Slip Op —, App Term Docket No 2023-1134 Q CR [App Term, 2d Dept, 2nd, 11th & 13th Jud Dist 2024]).[FN2]
The People assert that they exercised due diligence in ascertaining the existence of this material prior to the filing of the COC (People's Response at 15). The defendant argues that the People's COC was invalid because they waited eighty days after the arraignment to request LEOW material and then filed a COC without obtaining the requisite LEOW material (Defendant at 7).
"[T]he key question in determining if a proper COC has been filed is whether the prosecution has 'exercis[ed]' due diligence and ma[de] reasonable inquires to ascertain the existence of material and information subject to discovery" (People v Jawad, 2024 NY Slip Op —, App Term Docket No 2023-1134 Q CR [App Term, 2d Dept, 2nd, 11th & 13th Jud Dist 2024]), quoting People v Bay [41 NY3d at 211]). Moreover, due diligence "is a familiar and flexible standard that requires the People to make reasonable efforts to comply with statutory directives" (id.).
Here, as discussed above, the People disclosed a considerable volume of discovery and made reasonable inquiries and multiple requests for Officer Powell's LEOW information prior to the filing of the COC. The People noted these efforts in their February 23, 2024 COC. The LEOW disclosures were shared with defense five days later, on February 28, 2024.
As such, the People sufficiently articulated their efforts to ascertain the existence of discoverable disciplinary records and filed their COC in good faith.
Accordingly, the defense's motion to invalidate the People's COC on this ground is denied.

 Calibration Reports
The defendant argues that the People's COC should be invalidated because of the belated disclosure of calibration reports for the six-month period following the defendant's chemical test as required by CPL 245.20(1)(s). The People acknowledged that they disclosed the wrong set of calibration reports. Notwithstanding, they maintain such an error does not invalidate their COC, as upon learning of the error, they disclosed the correct set of calibration reports.
Here, the People described their efforts to obtain and provide the calibration reports, explained the lapse in the discovery, and disclosed the correct records the same day the defense attorney notified the People of the error. Thus, the court is satisfied that the People exercised due diligence and their COC was filed in good faith and reasonable under the circumstances (CPL 245.50[1]; see People v Pondexter, 76 Misc 3d 349, 353 [Crim Ct, New York County] [disclosing the gas chromatography and simulator solution records for the wrong IDTU machine]).
Accordingly, the defense's motion to invalidate the People's COC on this ground is denied.

Speedy Trial
The top charge against the defendant is a misdemeanor punishable by a definite sentence not exceeding one year; therefore, the People are required to be ready for trial within 90 days of the commencement of the action (VTL 1193[1][b]).
A defendant has the initial burden of asserting that the People's "30.30 time" has expired. Thereupon, the burden switches to the People to demonstrate that certain periods within that time should be excluded pursuant to statutorily enumerated exemptions (see CPL § 30.30[4]; People v Santos, 68 NY2d 859, 861 [1986]).
Whether the People have satisfied their CPL § 30.30 readiness obligation is generally calculated by computing the time elapsed between the filing of the first accusatory instrument and the People's declaration of readiness, subtracting any periods of delay that are excludable under the statutory provisions, and then adding to the result any post-readiness periods of delay that are attributable to the People and are ineligible for an exclusion (People v Cortes, 80 NY2d 201, 208 [1992]).
Here, the crux of the defense's statutory speedy trial claim is that the People's February 23, 2024 COC was invalid; thus, as defense argues, the SOR was illusory. However, since the Court finds that the People's COC valid, the Court rejects the defense's claim that all time periods following the SOR filed on February 23, 2024 are chargeable.
Accordingly, the defendant's motion to dismiss pursuant to CPL 30.30 is DENIED.
This constitutes the Decision and Order of the Court.
Dated: August 20, 2024
HON. JOANNE WATTERS, A.J.S.C.

Footnotes

Footnote 1:The People admitted into evidence the IDTU video without objection (People's Exhibit 1).

Footnote 2:At the time of this Decision and Order, a citation as provided by New York Official Law Report was not yet available.