People v Howard (2024 NY Slip Op 05733)

People v Howard

2024 NY Slip Op 05733

Decided on November 15, 2024

Appellate Division, Fourth Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided on November 15, 2024
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Fourth Judicial Department

PRESENT: WHALEN, P.J., CURRAN, OGDEN, DELCONTE, AND HANNAH, JJ.

781 KA 20-00435

[*1]THE PEOPLE OF THE STATE OF NEW YORK, RESPONDENT,
v
JOHN C. HOWARD, JR., DEFENDANT-APPELLANT. (APPEAL NO. 2.) 

JULIE CIANCA, PUBLIC DEFENDER, ROCHESTER (JAMES A. HOBBS OF COUNSEL), FOR DEFENDANT-APPELLANT. 
SANDRA DOORLEY, DISTRICT ATTORNEY, ROCHESTER (MARTIN P. MCCARTHY, II, OF COUNSEL), FOR RESPONDENT. 

 Appeal from a judgment of the Supreme Court, Monroe County (Alex R. Renzi, J.), rendered December 4, 2019. The judgment convicted defendant upon a jury verdict of criminal possession of a forged instrument in the second degree (20 counts). 
It is hereby ORDERED that the judgment so appealed from is unanimously reversed on the law, that part of the omnibus motion seeking to suppress tangible evidence is granted, the indictment is dismissed, and the matter is remitted to Supreme Court, Monroe County, for proceedings pursuant to CPL 470.45.
Memorandum: In appeal No. 2, defendant appeals from a judgment convicting him upon a jury verdict of 20 counts of criminal possession of a forged instrument in the second degree (Penal Law § 170.25), stemming from his alleged possession of forged checks. In appeal No. 1, he appeals from a judgment convicting him upon a jury verdict of nine counts of criminal possession of a forged instrument in the second degree (§ 170.25) and one count of criminal possession of a weapon in the fourth degree (§ 265.01 [4]), stemming from his alleged possession of additional forged checks and a rifle. Appeal Nos. 1 and 2 arise from separate indictments that were consolidated and tried together.
With respect to appeal No. 2, defendant contends that Supreme Court (Moran, J.) erred in refusing to suppress tangible evidence that was the fruit of an unlawful warrantless search of his home. We agree. It is undisputed that, at the time the police recovered the tangible evidence in question, they did not have a warrant to search defendant's home. " 'All warrantless searches presumptively are unreasonable per se' " (People v Jimenez, 22 NY3d 717, 721 [2014], quoting People v Hodge, 44 NY2d 553, 557 [1978]; see generally Schneckloth v Bustamonte, 412 US 218, 219 [1973]). Thus, "[w]here a warrant has not been obtained, it is the People who have the burden of overcoming that presumption" (Hodge, 44 NY2d at 557; see People v Messano, 41 NY3d 228, 233-234 [2024]; see generally People v Berrios, 28 NY2d 361, 367 [1971]). The People may meet their burden in that regard by establishing the applicability of one of the exceptions to the warrant requirement (see People v Sanders, 26 NY3d 773, 776-777 [2016]; Hodge, 44 NY2d at 557; People v Barner, 221 AD3d 1493, 1495-1496 [4th Dept 2023]).
As relevant here, the People sought to establish that the plain view doctrine, an established exception to the warrant requirement, justified their seizure of the challenged tangible evidence—i.e., checks, a printer, and a computer discovered in defendant's living room (see Messano, 41 NY3d at 232-233; see generally Arizona v Hicks, 480 US 321, 326 [1987]; Coolidge v New Hampshire, 403 US 443, 465 [1971 plurality]). "Under the plain view doctrine, if the sight of an object gives the police probable cause to believe that it is the instrumentality of a crime, the object may be seized without a warrant if three conditions are met: (1) the police are lawfully in the position from which the object is viewed; (2) the police have lawful access to the [*2]object; and (3) the object's incriminating nature is immediately apparent" (People v Diaz, 81 NY2d 106, 110 [1993], abrogated on other grounds by Minnesota v Dickerson, 508 US 366 [1993]; see People v Mosquito, 197 AD3d 504, 509 [2d Dept 2021]; People v Bishop, 161 AD3d 1547, 1547 [4th Dept 2018], lv denied 32 NY3d 1002 [2018]).
We conclude that the People met their burden with respect to the first two elements of the plain view exception because the police officers were lawfully in defendant's house responding to an emergency at the time they encountered the tangible evidence in question. We reject defendant's contention that the officers' continued presence in the house while waiting for a police investigator to arrive, after the initial basis for the police entry had been resolved, was unreasonable (see People v Richardson, 155 AD3d 1595, 1596 [4th Dept 2017], lv denied 30 NY3d 1119 [2018]; People v Lubbe, 58 AD3d 426, 426 [1st Dept 2009], lv denied 12 NY3d 818 [2009]; People v Osorio, 34 AD3d 1271, 1272 [4th Dept 2006], lv denied 8 NY3d 883 [2007]).
Nevertheless, we conclude that the People did not meet their burden of establishing the third element of the plain view exception—i.e., that the incriminating nature of the seized items was immediately apparent. In making such a determination, we must consider whether "the facts available to the [police] officer would warrant a [person] of reasonable caution in the belief . . . that [the] items may be contraband or stolen property or useful as evidence of a crime" (Texas v Brown, 460 US 730, 742 [1983] [internal quotation marks omitted]). This is a probable cause standard—i.e., there need not be "certainty or near certainty" about the incriminating nature of the seized items (People v Taylor, 104 AD3d 431, 432 [1st Dept 2013], lv denied 21 NY3d 914 [2013]; see Brown, 460 US at 741-742). That element is not satisfied, however, "where the object [to be seized] must be moved or manipulated before its illegality can be determined" (Mosquito, 197 AD3d at 509; see Dickerson, 508 US at 378-379). Indeed, "[s]uch a search or seizure may not be upheld without proof that the [police] officer who moved or manipulated the object had probable cause to believe that the object was evidence or contraband at the time that it was moved or manipulated" (People v Rodriguez, 211 AD3d 854, 858 [2d Dept 2022], lv denied 39 NY3d 1079 [2023]; see Mosquito, 197 AD3d at 509; People v Rivas, 214 AD2d 996, 996 [4th Dept 1995], lv denied 86 NY2d 801 [1995]). Still, "[a] truly cursory inspection—one that involves merely looking at what is already exposed to view, without disturbing it—is not a search" (Mosquito, 197 AD3d at 509 [internal quotation marks omitted]; see Hicks, 480 US at 328; Shamaeizadeh v Cunigan, 338 F3d 535, 555 [6th Cir 2003], cert denied 541 US 1041 [2004]).
Here, we conclude that the People did not meet their burden of establishing that the police obtained probable cause to believe that the items in question were evidence or contraband merely by observing the checks and other items in defendant's living room. Indeed, the evidence at the suppression hearing suggests that the police obtained probable cause only upon manipulating and moving the checks discovered in defendant's home. None of the police officers who testified at the suppression hearing expressly denied touching or manipulating the checks before determining that they were incriminating evidence. Moreover, body-worn camera (BWC) footage from two non-testifying officers entered in evidence at the suppression hearing suggests that the police did not ascertain the incriminating nature of the evidence until after they moved and manipulated the checks. In one officer's BWC footage, another officer is seen bending over with his arm outstretched toward the area where the evidence was found, at which point the footage cuts out. In the BWC footage from the officer seen bending over, even though the BWC is not pointed toward the checks, sounds indicative of shuffling papers are apparent as the officer is heard discussing various information found on the checks—i.e., information about the checks' payors and the amount.
Based on that evidence, we conclude that the People did not meet their burden of establishing that the incriminating nature of the seized items was immediately apparent inasmuch as they did not show that any probable cause was developed through mere observation, rather than through moving and manipulating the items in question (see Rodriguez, 211 AD3d at 858; Mosquito, 197 AD3d at 509-511; Rivas, 214 AD2d at 996). Consequently, because the People failed to establish the applicability of the plain view exception to justify their seizure of the items in question, we conclude that the court erred in refusing to suppress the tangible evidence seized by the police without a warrant.
We further conclude that any purported consent to a search of the home given by [*3]defendant or his romantic partner—which occurred after the police discovered the tangible evidence in question—did not attenuate the taint of the unlawful search (see People v Sweat, 170 AD3d 1659, 1660 [4th Dept 2019]). Indeed, rather than there being any "significant intervening event which justified the conclusion that [such] evidence was not the product of the illegal activity" (People v Williams, 79 AD3d 1653, 1655 [4th Dept 2010], affd 17 NY3d 834 [2011] [internal quotation marks omitted]), the sequence of events in the record shows that the purported consents were not sufficiently distinguishable from the unlawful search so as to attenuate the taint of the illegality but rather "flowed directly from" that illegality (People v Young, 255 AD2d 905, 906 [4th Dept 1998]; see Sweat, 170 AD3d at 1660).
Because the items suppressed constitute the sole evidence against defendant in appeal No. 2, we dismiss the indictment in that appeal (see People v Walker, 221 AD3d 1568, 1570 [4th Dept 2023]; People v Young, 202 AD2d 957, 958 [4th Dept 1994]). In light of our conclusion, defendant's remaining contentions in appeal No. 2 are academic.
We nevertheless reject defendant's further contention that our conclusion in appeal No. 2 requires us to grant suppression and dismiss the indictment in appeal No. 1. The evidence at issue in that appeal was obtained following the execution of a search warrant for defendant's house, which defendant asserts was obtained, at least in part, based on the items seized during the unlawful warrantless search of his home at issue in appeal No. 2. However, even though the search warrant application mentioned the fruits of the warrantless search, "the warrant . . . was primarily justified by the existence of more recent facts revealing ongoing criminal activity sufficient to justify a finding of probable cause at the time the warrant was issued" (People v Harris, 83 AD3d 1220, 1222 [3d Dept 2011], lv denied 17 NY3d 817 [2011] [internal quotation marks omitted]). Even excluding the material obtained via the unlawful search, we conclude that "the remaining information in the application was sufficient to establish probable cause to believe that evidence of a crime might be found in defendant's residence" (People v Howard, 215 AD3d 1257, 1258 [4th Dept 2023], lv denied 40 NY3d 929 [2023] [internal quotation marks omitted]; see People v Austin, 214 AD3d 1391, 1394 [4th Dept 2023], lv denied 40 NY3d 932 [2023]). Consequently, defendant was not entitled to suppression of the fruits of the search warrant in appeal No. 1.
Alternatively, defendant contends that—even if he is not entitled to suppression in appeal No. 1—he is entitled to a new trial in appeal No. 1 inasmuch as evidence from the unlawful search was used by the People at trial to establish elements with respect to charges in appeal No. 1. We reject that contention and conclude that reversal is not required in appeal No. 1 because, under the circumstances of this case, "there is no reasonable possibility that the evidence supporting the alleged tainted [conviction in appeal No. 2] had a spillover effect on the other conviction[ ]" (People v Sinha, 19 NY3d 932, 935 [2012]; see People v Doshi, 93 NY2d 499, 505 [1999]; People v Lee, 224 AD3d 1372, 1374 [4th Dept 2024], lv denied 41 NY3d 984 [2024]).
We reject defendant's further contention in appeal No. 1 that the evidence is legally insufficient to establish the element of intent to defraud, deceive, or injure another, necessary to support each conviction of criminal possession of a forged instrument in the second degree. Viewing the evidence in the light most favorable to the People, as we must (see People v Contes, 60 NY2d 620, 621 [1983]), we conclude that the evidence is legally sufficient to establish that defendant had the requisite intent (see generally People v Rodriguez, 17 NY3d 486, 489 [2011]; People v Bleakley, 69 NY2d 490, 495 [1987]). "A person is guilty of criminal possession of a forged instrument in the second degree when, with knowledge that it is forged and with intent to defraud, deceive or injure another, [that person] utters or possesses any forged instrument of a kind specified in section 170.10" (Penal Law § 170.25). Such fraudulent intent "may be inferred from a defendant's actions and surrounding circumstances" (People v Rebollo, 107 AD3d 1059, 1061 [3d Dept 2013]), and "need not be targeted at any specific person; a general intent to defraud suffices and the statute does not require that the defendant actually attempt to use the forged documents" (People v Rodriguez, 71 AD3d 450, 452-453 [1st Dept 2010], affd 17 NY3d 486 [2011]).
Here, the evidence at trial establishes that defendant was printing checks payable by businesses with which he had no connection and those businesses were unaware of the checks' drafting. Further, the trial evidence establishes that defendant intended for the checks to be [*4]negotiated inasmuch as they bore actual bank account numbers and he had purchased ink that would allow the checks to be read by bank scanners. We conclude that "it was permissible for the jury to infer that defendant was recently involved in the production of . . . false documents and that he retained the intent to defraud at the time" when the checks were recovered (Rodriguez, 17 NY3d at 490; see People v Dallas, 46 AD3d 489, 491 [1st Dept 2007], lv denied 10 NY3d 809 [2008], reconsideration denied 10 NY3d 933 [2008]). Consequently, there is a "valid line of reasoning and permissible inferences" from which a rational jury could have found that defendant had the requisite fraudulent intent concerning the checks found in his possession (Bleakley, 69 NY2d at 495; see Rodriguez, 17 NY3d at 489-490). In addition, viewing the evidence in light of the elements of the crimes as charged to the jury (see People v Danielson, 9 NY3d 342, 349 [2007]), we reject defendant's further contention that the verdict is against the weight of the evidence. Even assuming, arguendo, that a different verdict would not have been unreasonable, we conclude that it cannot be said that the jury failed to give the evidence the weight it should be accorded (see generally Bleakley, 69 NY2d at 495).
To the extent that defendant contends in appeal No. 1 that, in sentencing him, Supreme Court (Renzi, J.) penalized him for exercising his right to a trial, we conclude that defendant's contention is unpreserved inasmuch as he failed to raise that contention at sentencing (see People v Mohamed, 224 AD3d 1271, 1271-1272 [4th Dept 2024], lv denied 41 NY3d 984 [2024]; People v Britton, 213 AD3d 1326, 1328 [4th Dept 2023], lv denied 39 NY3d 1140 [2023]; People v Gorton, 195 AD3d 1428, 1430 [4th Dept 2021], lv denied 37 NY3d 1027 [2021]).
Finally, contrary to defendant's further contention, we conclude that the sentence is not unduly harsh or severe.
Entered: November 15, 2024
Ann Dillon Flynn
Clerk of the Court