People v Lowe (2025 NY Slip Op 50030(U))

[*1]

People v Lowe

2025 NY Slip Op 50030(U)

Decided on January 9, 2025

Criminal Court Of The City Of New York, Queens County

Pappachan, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on January 9, 2025
Criminal Court of the City of New York, Queens County

The People of the State of New York

against
Ryan Lowe, Defendant.

Docket No. CR-031674-23QN

For the People:
Joseph Cunningham, Assistant District Attorney 
Tracey Downing, Assistant District Attorney 
For the Defendant:
Jordan Coyne, Of Counsel
Gustavo Gutierrez, Of Counsel
Queens Defenders

Vidya Pappachan, J.

The Defendant, Ryan Lowe, stands charged with Penal Law [PL] § 145.00-1 Criminal Mischief in the Fourth Degree, PL § 145.60-2 Making Graffiti, PL § 220.03 Criminal Possession of a Controlled Substance in the Seventh Degree, PL § 145.65 Possession of Graffiti Instruments, Vehicle and Traffic Law [VTL] 511(1)(A) Aggravated Unlicensed Operation of a Motor Vehicle in the Third Degree, VLT § 1225-A Driving on Sidewalks, VLT § 319-1 No insurance, VTL § 410-1 Unregistered Motorcycle, VLT § 509-1 Driving by Unlicensed Operator.
A combined Huntley/Mapp/Dunaway hearing was conducted on October 16, 2024. The Court has considered the evidence and oral arguments of both parties.
The People contend that the stop and arrest of the Defendant was lawful, along with the search of his pockets, backpack, and scooter. The People seek to introduce statements alleged to have been made by the Defendant, a glassine recovered from Defendant's pocket, photographs of physical evidence recovered, namely spray paint cans in the scooter cupholder and seat compartment, and spray paint cans recovered from Defendant's backpack.
At the hearing, the People called one witness, Detective Daniel Gasperetti. Crucial to any court's assessment in determining whether officers had the requisite reasonable or probable cause to effectuate a stop of a motor vehicle, such as is the case here, and arrest an individual is an assessment of the credibility of witness testimony (People v Morales, 42 NY2d 129, 134 [1977]; People v Harris, 192 AD3d 151 [App Div, 2d Dept, 2020]). "Credibility is a many faceted concept ... requiring a careful assessment of a number of subtle factors before testimony can be labeled as believable or unbelievable" (People v. Wise, 46 NY2d 321, 325 [1978]; see Guide to NY Evid rule 6.11, Impeachment in General). In the case at bar, it bears note that the law [*2]enforcement witness presented by the People, Detective Gasperetti demonstrated inconsistencies during his testimony that were specifically countered or not corroborated on the BWC footage. Accordingly, as relevant here, the Court credits the testimony of Detective Gasperetti to the extent noted and makes the following findings of fact and conclusions of law. 
FINDINGS OF FACT
Detective Daniel Gasperetti testified that he has worked with the NYPD for approximately thirteen and a half years. At the time of his testimony, he worked as the Special Operations Lieutenant's Assistant, Graffiti Coordinators and ASPCA liaison for 103rd precinct. Detective Gasperetti testified that he received six months of training at the police academy, and various other trainings related to narcotics. In his career, he has made dozens of graffiti related arrests and hundreds of narcotics related arrests.
On November 1, 2023, Detective Gasperetti was working a tour from 9:30 am to 6:05 pm. He was assigned to the 103rd Precinct and was patrolling wearing a uniform in an unmarked black vehicle with his partner, Detective Gullo. At 11:20 am, Detective Gasperetti was on Hillside Avenue and approximately 175th Street, a public roadway in an area of mixed commercial and residential buildings. At that time, he observed a motor scooter chained to a pole with an individual who he recognized to be the defendant standing next to it. He testified that his attention was brought to the defendant because he knew that the defendant had a suspended license, and the motor scooter did not have a license plate on it. He also noticed a can of spray paint the cup holder of the motor scooter. Detective Gasperetti continued to observe the Defendant until he disconnected his scooter from the pole and drove on the sidewalk westbound on Hillside Avenue towards a halal cart. Detective Gasperetti approached the Defendant and asked to see his identification and began speaking to him about his driving (Hrg Tr at p35 L11-13). The Defendant began shuffling in his hoodie pockets (Hrg Tr at p14 L7). Detective Gasperetti testified that this shuffling enabled him to see a glassine envelope in Defendant's pocket with a stamp on it that he recognized as narcotics packaging. Detective Gasperetti was asked: ". . . how were you - were you able to identify that and what did you do after you identified it?" (Hrg Tr at p14 L14-15). He answered: "I recovered it, and I placed him under arrest. I vouchered it and I sent it to the lab for testing" (Hrg Tr at p14 L16). Detective Gasperetti further testified regarding the arrest: "I'm not sure if I placed him in handcuffs first or after, but he was placed under arrest when I recovered the property" (Hrg Tr at p14 L21-23).
Following the arrest Detective Gasperetti and Detective Gullo continued to search Defendant's pockets and asked him questions regarding the envelope, whether it was heroin and when he had used it. During this time, Detective Gasperetti requested that Defendant take off his backpack, the Defendant handed Detective Gasperetti the backpack, and Detective Gasperetti unzipped it finding spray paint inside. Detective Gasperetti then asked the Defendant questions regarding his use of the spray paint and whether he had used them for graffiti. Following this exchange, the Detective ordered Defendant to put his hands behind his back and handcuffed him (BWC at 11:30:30).
The Defendant was then placed in the back of the patrol vehicle and Detective Gasperetti retrieved the scooter. As officers decided how to transport the scooter to the precinct, they asked further questions to the Defendant regarding the status of his license and the scooter (BWC at 11:23:30 — 11:24:00). There was further exchange between Detective Gasperetti and the Defendant as to what would happen back at the precinct in terms of both return of the scooter [*3]and whether a Desk Appearance Ticket (DAT) will be issued. At approximately 11:35:03 on the BWC footage Detective Gasperetti joins the Defendant in the back seat of the police vehicle as Detective Gullo drives. During the transport Detective Gasperetti continues to ask the Defendant questions about the scooter and making graffiti.
At the precinct, Detective Gasperetti took two photographs — one of a spray paint can in the cup holder of the scooter and another of the opened "trunk" of the scooter (Hrg Tr at p25 L1-5). Detective Gasperetti testified that he read the Defendant his Miranda rights using a standard Miranda sheet and then questioned the defendant at the precinct. The Miranda Warning Sheet was entered into evidence and reflected that the form was completed at 13:43 hours (1:43 p.m.). After the defendant's confession, he was released with a DAT, and his motor scooter was returned that day.
CONCLUSIONS OF LAW
The People have the burden of commencing a suppression hearing by presenting evidence of probable, or reasonable cause to show the legality of the police conduct (People v Berrios, 28 NY2d 361, 367-78 [1971]). Once the People have met this burden, the Defendant bears the burden by a preponderance of the credible evidence of proving any illegality of the police conduct (id. at 367; Mapp v Ohio, 367 US 643 [1961]; Dunaway v New York, 442 US 200 [1979]; see People v DeBour, 40 NY2d 210, 323 [1976]). An officer has probable cause to arrest a person for committing an offense when "[it] appear[s] to be at least more probable than not that a crime has taken place and that the one arrested is its perpetrator, for conduct equally compatible with guilt or innocence will not suffice" (People v Carrasquillo, 54 NY2d 248, 254 [1981]). 
Probable cause does not require "proof sufficient to warrant a conviction beyond a reasonable doubt but merely information sufficient to support a reasonable belief that an offense has been or is being committed ... [t]he legal conclusion is to be made after considering all of the facts and circumstances together" (People v Bigelow, 66 NY2d 417, 423 [1985], quoting People v McRay, 51 NY2d 594).
In People v DeBour, the Court of Appeals set forth a framework for measuring the intrusiveness of police action in New York. as follows:
(1) a law enforcement official may approach a citizen and request information provided that there is an objective, credible and articulable reason to do so; (2) the second level "common law right of inquiry" permits a momentary stop when there is a founded suspicion that criminal activity is afoot; (3) the third level of inquiry permits an officer to forcibly stop and detain a person when such officer has a reasonable suspicion that the individual has committed, is committing or is about to commit a felony or misdemeanor and (4) an officer may initiate an arrest when there is probable cause to believe that an individual has committed, is committing or is about to commit a crime (People v DeBour, 40 NY2d 210 [1976]).
Where a defendant's vehicle is already stopped, police need only have an articulable reason to approach the vehicle and make an inquiry (see People v Spencer, 84 NY2d 749 [1995]; People v Fabian, 178 AD2d 544 [2d Dept 1991]). 
Given the facts known to the detective at the time, the only offense for which there was probable cause to approach the Defendant was based on the Detective's observation that the [*4]motor scooter did not have a license plate. However, this court finds that the detective's actions following this permissible approach were unlawful and require suppression. 
Stop of Defendant
Detective Gasperetti's observation of the Defendant driving the motor scooter without a license plate provided him probable cause to approach him. VTL § 402(1)(a), a traffic infraction, states in relevant part: "No person shall operate, drive or park a motor vehicle on the public highways of this state unless such vehicle shall have a distinctive number assigned to it by the commissioner and a set of number plates issued by the commissioner with a number and other identification matter if any, corresponding to that of the certificate of registration conspicuously displayed..." 
The People argue that Detective Gasperetti's observations provided probable cause for VTL § 1225-A Driving on Sidewalks.[FN1]
Here, Detective Gasperetti testified that the Defendant was driving on the sidewalk and that "he disconnected the motor scooter from the pole" and drove westbound on Hillside Avenue (Hrg Tr at p13 L13-14). However, the BWC in evidence did not depict the driving in question, and the record is void of details regarding the speed and the specific location of the Defendant's driving on the sidewalk. Driving on the sidewalk in and of itself is not a violation of VTL 1225-A, and the statute lists exceptions where doing so is permissible. Here, the record is void of any details as to the circumstances of Defendant's operation of the scooter on the sidewalk besides the general assertion of the direction in which the Defendant was travelling. Thus, on this record, Defendant's conduct as alleged is "equally compatible with guilt or innocence" (see Carrasquillo, 54 NY2d at 254) as it relates to a violation of VTL § 1225-A. Therefore, the People failed to establish that the detective's initial stop and detention of the defendant was justified due to an alleged violation of VTL § 1225-A.
The People's contention that Detective Gasperetti had probable cause to arrest at the initial approach of the defendant for driving without a valid driver's license is misplaced. According to Detective Gasperetti's testimony and BWC, he knew the defendant from an arrest from months before for driving with a suspended license. The Detective then tells a bystander who is inquiring about the scooter and Defendant's status, "I know him from the past, and I know he shouldn't be driving" (BWC at 11:26:17). However, the record does not reflect that Detective Gasperetti ran the defendant's license that day at any point. When he was specifically asked this question on cross examination, he could not remember if he ever did. Detective Gasperetti only vaguely indicated that he "most likely" didn't check the scooter's registration until back at the precinct. This assertion is consistent with the BWC, which reflects Detective [*5]Gasperetti running a check of the Defendant, his license, or the vehicle number until after Defendant is in handcuffs. Thus, the People's argument that the Detective Gasperetti had a basis to approach the Defendant for this reason is discredited.
Information about Defendant's prior criminal behavior does not support a finding of probable cause for a new arrest (see People v Johnson, 64 NY2d 617, 619 [1984] ["a stop based on no more than that a suspect has previously been arrested for burglary and that there have been burglaries in the area is premature and unlawful and cannot be justified by subsequently acquired information resulting from the stop"]). Therefore, the evidence does not support the finding that Detective Gasperetti had probable cause to arrest the Defendant for the license and registration related offenses at the time of this stop.
Lastly, any contention that Detective Gasperetti's observation of the spray paint can in the cupholder of the scooter provided probable cause to arrest the Defendant for possession of graffiti instruments is also discredited. PL § 145.65 proscribes " [a] person is guilty of possession of graffiti instruments when he possesses any tool, instrument, article, substance, solution or other compound designed or commonly used to etch, paint, cover, draw upon or otherwise place a mark upon a piece of property which that person has no permission or authority to etch, paint, cover, draw upon or otherwise mark, under circumstances evincing an intent to use same in order to damage such property" (PL § 145.65) (emphasis added). Here, there is nothing in the record to support the conclusion that the defendant evidenced an intent to use the spray paint in order to damage property. The mere possession of a spray paint can does not make out this offense, and therefore, cannot be used to justify the arrest of the defendant. 
Therefore, for the reasons delineated above, Detective Gasperetti only had probable cause to approach the Defendant fora violation of VTL § 402(1)(a), a traffic infraction (supra DeBour).
Search of Defendant's Pockets
Determining the reasonableness of searches of motorists after stops for traffic violations, the Court of Appeals in People v Reid, 24 NY3d 615 [2014], found that an Officer was not permitted to search a motorist when there was "no actual arrest . . . just . . . probable cause that might have led to an arrest, but did not" (id. at 619; see also Knowles v Iowa, 525 US 113 [1998]). In other words, the fact that there may be an arrest did not warrant a search incident to lawful arrest because an arrest in itself had not yet happened. In Reid, the defendant was pulled over after the officer observed erratic driving, and based on the defendant's appearance was ordered out of the car. The police searched his person, and subsequently uncovered a knife in his pocket. The Reid Court held that while there was evidence to support probable cause to arrest the Defendant for driving while intoxicated, the officer testified at the suppression hearing that he did not intend to arrest the defendant when he was initially stopped and searched him; but for the search, the arrest would never have taken place. The Court of Appeals in Reid concluded that the "'search incident to arrest' doctrine, by its nature, requires proof that, at the time of the search, an arrest has already occurred or is about to occur", and since an arrest had not actually happened or was intended, the search could not be upheld (Reid NY3d at 620).
The Court of Appeals in Reid differentiated Whren v United States, 517 US 806, 814 [1996], and People v Robinson, 97 NY2d 341 [2001], cases which allow officers to exercise their authority to make a lawful traffic stop for a reason other than enforcing traffic laws (see Reid, 24 NY3d at 619). While in many circumstances the subjective intent of an officer does not [*6]control this analysis, "these cases differentiate between officers who exercise a power the law bestows on them, regardless of their subjective intentions, and officers who choose not to exercise their power but then attempt to justify an unlawful action by invoking the power they failed to exercise" (People v Reinoso, 74 Misc 3d 704, 710 [Sup Ct 2022]).
Under New York law, the police are not permitted to make custodial arrests or search individuals "incident to arrest" for ordinary traffic infractions (People v Adams , 32 NY2d 451 [1973] [held it was unlawful to search a motorist for a traffic misdemeanor, where, the offense was of driving with an altered vehicle identification number]; People v Marsh, 20 NY2d 98, 101 [1967] [the Court of Appeals held that it was not reasonable for the police to search an individual who had been arrested for a traffic violation]; see also People v Howell , 49 NY2d 778, 779 [1980] [found it unlawful to frisk a motorist accused of the misdemeanor offense of reckless driving based on the "belief that the defendant might be armed [where] there [wa]s no testimony or finding as to what circumstances led the police officer to that conclusion"]). "The Court of Appeals has recognized that . . . even if there is probable cause to arrest a motorist, the officer may not rely on his right to search the motorist incident to arrest unless an arrest has been or is about to be effectuated" (People v Reinoso, 74 Misc 3d 704, 709 [Sup Ct 2022] [holding a gun recovered from a search of Defendant's person was unlawful even after lawful stop of the vehicle for violation of PL 170.20 possession of forged instruments because there was nothing further to justify the search of the defendant and an arrest had not taken place prior to the search]; accord People v Aragon, 2025 NY Slip Op 00055, 1 [1st Dept Jan. 7, 2025] [suppressing fruits of the search where an officer saw loose marijuana on defendant's lap, asked him to step out of the car, and immediately frisked him because the drugs were not recovered in a valid search pursuant to a lawful arrest because the record failed to show that the officer had any intention of arresting defendant before recovering the cocaine], citing Reid, 24 NY3d at 619; People v Lamberty, 2024 NY Slip Op 06669, 1 [1st Dept Dec. 31, 2024] [Suppressing where "the People failed to demonstrate that the search of defendant's fanny pack was a proper search incident to a lawful arrest because they failed to establish either that the officer actually arrested defendant or intended to do so before opening his bag"], citing Reid, 24 NY3d at 619).
Here, although the detective's initial approach of the defendant was justified under VTL § 402, a traffic infraction, his subsequent search of Defendant's pockets was unlawful. As captured on the detective's BWC, immediately upon approach, the following exchange occurs:
Det. Gasperetti: Ryan you got your ID on you? Why you driving that thing?
Defendant: Cause you know I just bought it I have to get it to my brothers
Det. Gasperetti: Its your brothers? You know you can't drive it on the sidewalk though right
Defendant: Right I know I was just going to my program
Det. Gasperetti: You know you can't drive it on the sidewalk though right
Defendant: I was just
Det Gasperetti: so why were you driving ?
Defendant: I wasn't it was just connected to that pole and this bike right there
Det. Gasperetti; But you drove it onto the sidewalk and chained it up
Defendant: no, didn't drive it I just mounted it right there
Det. Gasperetti: Let me see your ID real quick
(BWC at 11:18:02 to 11:18:40).
Any contention by the People that the glassine envelope discovered by the detective in "plain view" is simply contradicted by the BWC footage in evidence. "Under the plain view doctrine, if the sight of an object gives the police probable cause to believe that it is the instrumentality of a crime, the object may be seized without a warrant if three conditions are met: [1.] the police are lawfully in the position from which the object is viewed; [2.] the police have lawful access to the object; and [3.] the object's incriminating nature is immediately apparent. The plain view doctrine, it must be emphasized, establishes an exception to the requirement of a warrant not to search for an item, but to seize it . . . . The theory underlying the justification for the plain view exception cannot logically be extended to concealed items which are discoverable only through [so-called 'plain touch']" (People v Diaz, 81 NY2d 106, 110-11 [1993]). It is the People's burden to establish that the elements of the plain view doctrine are met to show the seizure of the item was lawful (id.). The record does not support this contention. Detective Gasperetti's testimony that the Defendant "shuffling in his pocket" enabled him to see a small glassine and identify the stamp on it inside of the pocket is not supported by the BWC footage. 
BWC footage introduced at the hearing depicts the Defendant wearing a loose-fitting zip up sweatshirt with pockets located in the bottom half of the sweatshirt. Following the above exchange, the Defendant is seen placing his hands in his pockets and pulling on his backpack from his back to his side. The BWC shows at least the top third of the pocket and the tops of Defendant's hand going into the pocket. Detective Gasperetti is then seen placing his own hand on Defendant's arm and puts his hands directly into Defendant's sweatshirt pockets (BWC at 11:18:50). Given that the BWC footage does not indicate how it would have been possible for Detective Gasperetti to view inside of Defendant's pocket, the conclusory testimony of Detective Gasperetti does not make out the People's burden to show that his glassine was lawfully recovered through the plain view doctrine.
Detective Gasperetti testified: "I recovered [the glassine] and I placed him under arrest" (Hrg Tr at p14 L16). Detective Gasperetti further testified regarding the arrest: "I'm not sure if I placed him in handcuffs first or after, but he was placed under arrest when I recovered the property" (Hrg Tr at p14 L21-23).Thus, it is evident from Detective Gasperetti's own testimony, he did not decide to arrest the Defendant until after he recovered the glassine.[FN2]
The situation at hand is analogous to Reid. Here, while there may have been probable cause that could have led to an arrest for a traffic infraction, the record is clear, based on his own testimony, that at the point when Detective Gasperetti searched the Defendant's pockets, an arrest had not yet been effectuated. Here, as in the cases analyzed in Reid, this search cannot be retroactively justified [*7]by the arrest that subsequently occurred (see People v Reid, 24 NY3d at 619; People v Reinoso, 74 Misc 3d 704, 710 [Sup Ct 2022]).
Therefore, this court finds that Detective Gasperetti's actions of searching the defendant upon approach, and his subsequent recovery of the glassine from the defendant's pocket were unlawful.
Search of Bag & Observation of Spray Paint Cans
A defendant may challenge the admissibility of physical evidence obtained as a result of a search or seizure if the evidence was obtained in violation of the United States or New York constitutions (Mapp v Ohio, 367 US 643 [1961]). At a Mapp hearing, the People have the burden of overcoming the presumptive unreasonableness of warrantless searches (People v Knapp, 52 NY2d 689 [1981]). However, the defendant bears the ultimate burden of proving, by a preponderance of evidence, that the police conduct was illegal (People v Sidham, 204 AD2d 150 [1st Dept 1994]). 
Here, the People argue that Defendant consented to the search of his bag. The People bear the heavy burden to show, by clear and convincing evidence, that the defendant's consent was given freely and voluntarily (People v Gonzalez, 39 NY2d 122, 128 [1976]). Consent is not voluntary unless "it is a true act of the will, an unequivocal product of an essentially free and unconstrained choice. Voluntariness is incompatible with official coercion, actual or implicit, overt or subtle" (id. at 128). The evidence at the hearing demonstrates otherwise.
Here, the People have failed to demonstrate by clear and convincing evidence that consent to search the backpack was freely and voluntarily given. Detective Gasperetti searched Defendant's bag after a serious of questions and as the Defendant is simultaneously being physically searched by two officers. When Detective Gasperetti placed his hands on the Defendant's arm and then into Defendant's sweatshirt pockets (BWC at 11:18:50), the following exchange occurs:
Det. Gasperetti: "I see that you got this, Is this full heroine?
Defendant: No
Det. Gasperetti: Empty?
Defendant: Yeah
Det. Gasperetti: Sure?
Defendant: Yeah look at it, I go to a program
Det. Gasperetti: But you already sniffed this?
Defendant: No its done
Det. Gasperetti: its done, You sniffed it already though right its done
Defendant: No I its old,
Detective Gullo: so you carry around empty bags? Come on man
Defendant: No Seriously bro I'm an addict
Detective Gullo: So you carry around empty bags
Defendant: No I have nothing on me, seriously you can check me I have nothing on me
Det. Gasperetti: And what's up with the spray can over there?
Defendant: That's just literally I have it right there
Det. Gasperetti: So when's the last time you used it
Defendant: Bro ever since what happened I'm just going from A to B I just stay out of [*8]trouble and go to my program and smoke a little weed I was just smoking week with my friend right here
Det. Gasperetti: Take this off for me. What's in there? (while touching the backpack on the defendant)
Defendant: Spray Paint. (while taking the backpack off and handing it to the officer)
(BWC at 11:18:50 to 11:19:47).
In similar circumstances, the Court in People v Packer, 49 AD3d 184, 187 [1st Dept 2008], affd, 10 NY3d 915 [2008] [internal citations omitted] elucidated that "[h]ad the encounter culminating in defendant's consent been initiated by a simple request for identification, it is possible that the People would be able to demonstrate that the consent upon which they rely was freely given. The record, however, does not permit the conclusion that the encounter was in its true aspect so modest; rather, it included highly intrusive police conduct the coercive effect of which could not have abated when, only moments later, defendant consented to the search of his pack. Under these circumstances, no showing of voluntariness consonant with the exacting standard set forth in Gonzalez is possible; the People's burden under the facts at bar is not merely 'heavy' it is insuperable."
At the hearing, Detective Gasperetti testified that Defendant "just opened his bag that he had on his chest, and he had additional spray paint cans and permanent markers" (Hrg Tr at p15 L10-11). When asked "When you opened his bag" the Detective responded: "He unzipped his bag" referring to the Defendant (Hrg Tr at p15 25). When asked if Defendant gave him express permission to search the bag and he responded "Well, he was under the arrest at that point" (Hrg Tr at p57 L5), and after being shown his BWC, Detective Gasperetti testified that Defendant told him, "seriously you can check me" (Hrg Tr at p57 L14-20).
Detective Gasperetti's testimony at the hearing is inconsistent with the BWC camera footage. Given these circumstances, the Court cannot find that there was consent given freely and voluntarily.
Therefore, the search of Defendant's backpack is not justified by way of consent or as a search incident to lawful arrest; the contents of the backpack are suppressed.
Spray Paint Can in Cupholder
As to the can of spray paint seized from the cupholder of Defendant's motor scooter, the People assert Detective Gasperetti observed the spray paint can when he was on the street, while the Defendant was driving his motor scooter. "Under the plain view doctrine, if the sight of an object gives the police probable cause to believe that it is the instrumentality of a crime, the object may be seized without a warrant if three conditions are met: [1.] the police are lawfully in the position from which the object is viewed; [2.] the police have lawful access to the object; and [3.] the object's incriminating nature is immediately apparent (see People v Diaz, 81 NY2d 106, 110-11 [1993][).
Seizure of an item is not justified under the plain view doctrine where at the time of the seizure the officer does not have information about that specific object being contraband the object's incriminating nature, an object having a potential illicit use is insufficient to support seizure under the plain view doctrine (People v Mosquito, 197 AD3d 504, 511 [2d Dept 2021] [holding that the officer's discovery of three credit cards stacked inside a small zippered wallet was insufficient, without more, to justify an additional search that went beyond the search for [*9]marihuana reasoning that "inadvertent or incidental observation of an openly visible article that is known to have illicit uses is in and of itself insufficient to establish probable cause"] [internal citations omitted]; see also People v Greene, 104 AD2d 601, 603 [2d Dept 1984] [unlawful seizure where the police "at that time had no knowledge of any burglary having been committed" and lacked probable cause to believe that the goods were stolen]).
The only evidence put forth by the People regarding the spray paint can in the cup holder was that it was observed in the cup holder while Defendant drove his motor bike (Hrg Tr. P12 L15-17), and that a photograph of it was taken when the officer was "back at 103 precinct" (Hrg Tr at p24 L25; p25 L1-6). The record is void of any evidence that the Detective knew of the Defendant using that specific spray paint can in an unlawful manner. The general testimony from the Officer that he knew Mr. Lowe as "the graffiti guy" and that other officers and Detective Gasperetti had arrested the Defendant in the past (Hrg. Tr. P 29 L4-12), does not provide probable cause for this item to be seized (see Mosquito, 197 AD3d at 511). Additionally, as discussed, supra, spray paint is not contraband and the mere possession of it does not constitute a crime. Therefore, the incriminating nature being immediately apparent was not made out in the evidence put forth by the People, and they have not met their burden to show this evidence was lawfully obtained (see People v Washington, 107 AD3d 4, 15 [2d Dept 2013]).
Search of the Motor Scooter Compartment
The People have failed to meet their burden to establish that the search of the compartment underneath the seat of Defendant's motorbike was lawful, and therefore, the contents of the compartment are suppressed (see People v Washington, 107 AD3d 4, 15 [2d Dept 2013] ["due to the vagueness in their proof, the People failed to satisfy their burden of going forward to show the legality of the police conduct in the first instance"]).
There is a paucity of testimony as to how Detective Gasperetti gained access to this compartment. The only testimony elicited that discussed this search was when the People were laying the foundation for two photographs the Detective said he took when he was "back at the 103 precinct" and the Detective testified that one photo was taken "after he opened the trunk of the scooter" (Hrg Tr at p25 L1-5). The People argued summarily, "the defendant consented to the search of those items that were in his backpack as well as underneath the seat of the defendant's motorbike" (Hrg Tr at p69 L24-25, P70 L1). The People bear the heavy burden to show, by clear and convincing evidence, that the defendant's consent was given freely and voluntarily (People v Gonzalez, 39 NY2d 122, 128 [1976]). There was no testimony about what led to his opening the compartment of the scooter or at what time this occurred. It is unclear from the BWC when this search occurred.
In evaluating the entirety of the evidence adduced at the hearing, the record remains vague as to the circumstances of the seizure and accordingly, the People have not met their burden to establish the lawful seizure of the cans of spray paint in the scooter compartment. As such, they are suppressed.
Motion to Suppress Defendant's Statements
At a Huntley hearing, the People bear the burden of proving the voluntariness of each statement made by Defendant to law enforcement beyond a reasonable doubt (People v Huntley, [*10]15 NY2d 72, 78 [1965]). If the People have satisfied their obligation, the burden is on the defendant to show otherwise (People v Vidal, 44 AD3d802, 802 [2d Dept 2007]). In determining the voluntariness or involuntariness of the Defendant's statements, the Court considers whether the statements are coerced or obtained by threats, improper conduct, undue pressure, or trickery (Brown v Mississippi, 297 US 278; CPL 60.45[2][a]). 
Where statements are not voluntary, Miranda safeguards are triggered whenever there is custodial interrogation. In deciding whether a Defendant is in custody, the Court evaluates whether a reasonable person, innocent of any crime, would have thought she was free to leave had she been in the Defendant's position (People v Harris, 48 NY2d 208, 2015 [1979]; People v Yukl, 25 NY2d 585 [1969]). In evaluating whether a Defendant has been subject to interrogation, the Court looks to 'words' or 'actions' on the part of the police that are likely to elicit an incriminating response (People v Wortham, 37 NY3d 407, 413 [2021], quoting People v Ferro, 63 NY2d 316 [1984]). The People may not use statements that are the product of custodial interrogation unless it demonstrates the use of procedural safeguards that are effective to secure the privilege against self-incrimination (People v Paulman, 5 NY3d 122 [2005]; Miranda v Arizona, 384 US 436, 444-45 [1966]). 
Noticed & Unnoticed Statements from Scene Prior to Defendant's Arrest
As it relates to the voluntariness of the Defendant's noticed statement at the scene and whether it was attained in violation of the Defendant's Miranda rights, statements made in response to police officers' general inquires at the preliminary stage of investigation are not generally considered the product of interrogation (see People v Johnson, 59 NY2d 1014 [1983]; People v Chestnut, 51 NY2d 14 [1980]). "Roadside detentions have been held to be noncustodial and reasonable initial interrogation attendant thereto has been held to be merely investigatory" (People v Mathis, 136 AD2d 746 [1988]; see People v Brown, 104 AD2d 696 [1984]). 
Here, Defendant was asked several questions immediately upon the officer's approach. The BWC of Detective Gasperetti reflects that as he walks toward the Defendant and the following exchange occurs:
Det. Gasperetti: Ryan you got your ID on you? Why you driving that thing?
Defendant: Cause you know I just bought it I have to get it to my brothers
Det. Gasperetti: You know you can't drive it on the sidewalk though right
Defendant: I was just going to my program
Det. Gasperetti: But you know you can't drive it on the sidewalk
Defendant: I didn't drive it I just mounted it right there
Det. Gasperetti: Let me see your ID real quick
(BWC at 11:18:02 to 11:18:40)
During this exchange the Defendant was standing on the street and was not in handcuffs, Detective Gasperetti and his partner who was also present did not have their weapons drawn, and they had not yet touched the Defendant or searched his pockets.
Under the circumstances, Defendant was neither in custody nor subjected to interrogation, nor was this statement coerced. The Defendant's statement was the product of investigatory questioning and therefore not subject to suppression (see People v Small, 212 AD3d 655 [2023]; People v Gore, 117 AD3d 845 [2014]). The questions to Defendant at this [*11]stage were investigatory in nature. Accordingly, Defendant's response to officers' questions at the scene at this point are voluntary and not subject to Miranda. 
Further, the People satisfied their burden in proving beyond a reasonable doubt that this noticed statement was voluntary since no evidence was adduced at the hearing that they were the product of force, threats or coercion (see CPL § 60.45; People v Huntley, 15 NY2d 72 [1965]).
The motion to suppress the noticed and unnoticed statements at the southeast corner of hillside avenue and 175th street, prior to the Defendant's arrest, is denied and admissible at trial during the People's case-in-chief. 
Unnoticed Statements at the Scene After the Defendant's Arrest & Noticed Statement at Precinct
The Defendant was under arrest when the officer's recovered the envelope of heroin from him, which was recovered through an unlawful search and subsequent arrest.
It is axiomatic that where evidence is obtained as "fruit of the poisonous tree" meaning the evidence has "been come at by exploitation" of an illegality, it must be suppressed (Wong Sun v US, 371 US 471, 488 [1963]). This exclusionary rule extends to any "fruits" of a constitutional violation "whether such evidence be tangible, physical material actually seized in an illegal search, items observed or words overheard in the course of the unlawful activity, or confessions or statements of the accused obtained during an illegal arrest and detention" (US v Crews, 445 US 463, 470 [1980]). The Court of Appeals has held that statements following an illegal arrest should be suppressed (People v Johnson, 66 NY2d 398, 407 [1985]).
Here, the record reflects a continuous chain of events following the unlawful arrest of the Defendant until his statement was taken at the precinct. The Defendant is continually questioned by both Detectives on the street and during transport to the precinct regarding the status of his license, the status of the motor scooter he was driving, and whether he has been making graffiti.
These statements were obtained after the arrest have come at by exploitation of that illegal arrest and are not sufficiently distinguishable to be purged of the primary taint (Wong Sun v US, 371 U.S. 471, 488 [1963]). Therefore, all statements of the defendant after his arrest must be suppressed, this includes all unnoticed statements of the defendant at the scene and during transport to the precinct, and the second noticed statement of the Defendant was taken at the 103rd precinct.
Conclusion
Based on the above, the Defendant's Dunaway motion is granted in part but denied to the extent that officers had probable cause to arrest the Defendant for the minor VTL infraction of VTL § 410-1 Unregistered Motorcycle.
Accordingly, the motion to suppress physical property as part of the Mapp hearing is granted to the extent that the following items are suppressed: the glassine recovered from Defendant's person, photographs of the spray paint cans in the scooter cupholder and compartment, spray paint cans recovered from Defendant's backpack.
The motion to suppress statements as part of the Huntley hearing is granted to the extent that the noticed statements at the southeast corner of Hillside Avenue and 175th street, prior to the Defendant's arrest, is denied and those statements are admissible at trial during the [*12]People's case-in-chief. 
Statements by the defendant after his arrest (when Detective Gasperetti recovers the glassines from Defendant's person) are suppressed.
The foregoing constitutes the opinion, decision, and order of the Court.
Dated: January 9, 2025
Queens, New York
ENTER:
Vidya Pappachan, J.C.C.

Footnotes

Footnote 1:VTL § 1225-A Driving on Sidewalks states: No person shall drive a motor vehicle on or across a sidewalk, except that a vehicle may be driven at a reasonable speed, but not more than five miles per hour, on or across a sidewalk in such manner as not to interfere with the safety and passage of pedestrians thereon, who shall have the right of way, when it is reasonable and necessary: (a) to gain access to a public highway, private way or lands or buildings adjacent to such highway or way; (b) in the conduct of work upon a highway, or upon a private way or lands or buildings adjacent to such highway or way, or (c) to plow snow or perform any other public service, for hire, or otherwise, which could not otherwise be reasonably and properly performed.

Footnote 2:Despite the detective's claim that the defendant was not under arrest at the time of his approach, "[e]ven without a technical formal arrest, a suspect's detention may in fact be the equivalent of an arrest, requiring probable cause" (People v Hicks, 68 NY2d 234, 239-40 [1986] [" We have rejected as standards for determining when a de facto arrest has taken place the wholly subjective belief of the officer, as well as that of the citizen, and looked instead to what a reasonable man, innocent of any crime, would have thought had he been in the defendant's position"]). A reasonable person in the defendant's position, experiencing a search of their body and police questioning, would have not thought they were free to leave these officers even prior to the defendant's formal arrest and handcuffing.